## Nolan v. Jeffries.

(Decided December 5, 1922.)

### Appeal from Madison Circuit Court.

1. Trial—Continuance—Absence of Non-Resident Witness.—The refusal by the trial court of a continuance on account of the absence of a non-resident witness whose attendance or deposition as a witness is desired, is not reversible error, where, as in this case, so much of the affidavit supporting the continuance as set forth the facts to which it was claimed the witness would testify was allowed to be read on the trial as his deposition, and no showing was made by the party asking the continuance that the full benefit to him of the testimony of such witness could not as well be obtained in that manner as by his presence and oral examination in court.

2. Trial—Instructions.—Instructions to a jury should be predicated solely upon the issues made by the pleadings; but if erroneously predicated in some particular upon an issue not made by the pleadings which was improperly injected on the trial by the party against whom the verdict is returned, such error of the

court will not entitle the latter to a new trial, nor, on appeal, constitute reversible error.

G MURRAY SMITH for appellant

A. R. BURNAM, JR., for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, James H. Jeffries, an attorney at law residing in Pineville, Kentucky, brought this action in the court below against A. M. Clarke, L. E. Yoder, W. F. Hall and the appellant, J. W. Nolan, seeking to recover of them certain attorney's fees, totaling $1,000.00, alleged to be due him from them for professional services rendered them and, in addition, a balance on account of $52.40, claimed for expenses incurred in performing the professional services referred to.

In order to explain the character of the professional services sued for, it will be necessary, in some sort, to review the litigation in which they were rendered. It appears from the record that Clarke, Yoder and the appellant Nolan were the owners in equal parts of all the capital stock of a corporation styled the "Storm King Coal Company" which owned the title to or valuable leases on a coal mine, coal and other mineral rights in lands situated in Perry county, this state, upon which leases and mineral rights the corporation and stockholders named in the spring of 1918, by a writing then executed, gave or sold to one Walton Sudduth an option of purchase, to be exercised by his paying within the time fixed by the contract, $45,000.00, the consideration agreed to be paid as the purchase price of the properties. Before the expiration of this option, however, the corporation and stockholders sold and conveyed the mineral properties to another purchaser, H. H. Cupler, at the price of $65,000.00, which was $20,000.00 more than the price stated in the option. Sudduth threatened to attack the sale upon the ground that it violated his right to take the property under his option, which had not expired, but subsequently elected to set up claim to the $20,000.00 difference between his option price of $45,000.00 and the $65,000.00 agreed to be paid by the last purchaser of the property; and in order to carry out the latter deal all the parties concerned entered into a writing whereby it was agreed that it should be consummated, and that the $20,000.00 claimed by Sudduth, which was invested in

United States Government Bonds, should be held in escrow until the question of their ownership could be determined by the courts. Thereupon Sudduth sued to recover the bonds by action brought in the United States District Court for the Eastern District of Kentucky against the Storm King Coal Company, Clarke, Yoder and Nolan as its only stockholders, and H. H. Cupler, by whom the bonds had been paid on the purchase price of the coal properties to his codefendants. The defendants won in the district court, but the judgment of that court was reversed by the United States Circuit Court of Appeals on appeal to that court by Sudduth, who was thereby adjudged the owner and awarded the possession of the $20,000.00 of bonds in controversy. It is admitted that the defense of Clarke, Yoder and Nolan was conducted both in the district court and the circuit court of appeals by W. F. Hall and the appellee, Jeffries, and that their refusal to compensate the latter for his services led to the institution of this action.

The defendant, L. E. Yoder, because of his removal to West Virginia about the time of the institution of the action, was never served with a summons on the petition. Nor does it appear from the record that the defendant, W. F. Hall, was summoned, but as it does show the return by the jury of a directed verdict in his behalf, it may be inferred that he did by answer interpose a good defense to the action. The record also shows that the other defendants, Clarke and Nolan, were served with summons, but fails to show that Clarke filed an answer. A separate answer filed by Nolan appears in the record, however, followed by an agreed order controverting of record for the plaintiff all affirmative matter contained therein. The trial in the court below resulted in a verdict in favor of the latter and against Clarke and Nolan for the entire amount claimed in the petition. Both Clarke and Nolan filed motion and grounds for a new trial, which the court overruled. This ruling was followed by the granting of an appeal from the judgment entered on the verdict, which is prosecuted by Nolan alone.

A reversal of the judgment is urged by the appellant on the grounds that error was committed by the trial court: (1) In refusing him a continuance of the case; (2) in admitting incompetent evidence; (3) in overruling his motion, made when the appellee's evidence was concluded and again at the conclusion of all

the evidence, for an instruction peremptorily directing a verdict in his behalf; (4) in giving and refusing instructions. It is sufficient to say in regard to the first contention that it seems to be wholly lacking in merit. The continuance was asked, as stated in the appellant's affidavit, to enable him to procure the attendance of L. E. Yoder as a witness, or to obtain his deposition. Saying nothing of the incompetency of a part of the testimony it was claimed Yoder would furnish, the affidavit is lacking in any showing of diligence in trying to obtain his attendance or deposition, although the appellant had two months between the service of the summons upon him and the date of the trial, in which to obtain either or both. But if this were not so, it is not apparent how he could have been prejudiced by the refusal of the continuance in view of his having been permitted to read to the jury as the deposition of Yoder, so much of his (appellant's) affidavit as contained the statements it stated would be made by Yoder, if present. As it was not stated in the affidavit that the appellant could not in that way obtain the full effect of Yoder's testimony, it will not be presumed that he would have been benefited in any greater degree by the presence and oral testimony of the witness.

The admitted evidence complained of in the second ground for reversal relied on by the appellant, was contained in the testimony of the appellee as to conversations and correspondence that passed between him and L. E. Yoder respecting his employment by Yoder, Clarke and the appellant, Nolan, as their attorney in the action of Sudduth against them in the Federal court, it being contended by appellant's counsel that this evidence was incompetent because the conversations and correspondence occurred in the absence of Clarke and appellant. This contention must be tested by the issues made by the pleadings.

Looking first to the petition, we find that it seeks the recovery upon account of a $1,000.00 fee for legal services rendered the appellant, Clarke and Yoder by appellee as attorney at law in the Federal court case of Sudduth against them; and also $54.40 balance for expenses necessarily incurred in the performance of the legal services, all set out in an itemized account filed with the petition. In the petition it is alleged that the legal services were rendered for the persons named "at their special instance and request, and for which

they agreed and promised to pay the plaintiff." The petition does not allege any agreement as to the amount of the fee or fees to be paid the appellee by the parties employing him, but does fix the total value and amount of fee due him for the services rendered at $1,000.00, and the total amount expended for them by him in "paying court costs and other expenses incident and necessary to the proper conduct of said case," at $154.40, credited by $100.00 paid him by Yoder July 30, 1918. And also alleges that "the charges of attorney's fees for the legal services and labor so performed by the plaintiff in said case are just and reasonable charges for the said legal services and labor, and that the items of costs and expenses are correct and just" and that the entire amount sued for is due and unpaid.

The answer of the appellant consists of three paragraphs. The first contains a traverse. The second is as follows: "The defendant for further answer states that the plaintiff with another attorney, W. F. Hall, were employed to defend the interest of this defendant, A. M. Clark, and L. E. Yoder in a fund of $20,000.00 in the First National Bank of Hazard, Ky. That the employment of said attorneys to defend the interests of the defendants above named was a contingent fee of $1,200.00, each defendant to be responsible for one-third of said fee. That in the final determination of said action the defendants above mentioned, who were also defendants in the action wherein the plaintiff and W. F. Hall were defending them, lost said case, and were adjudged to and did lose the $20,000.00 above mentioned, and that said employment of said attorneys being contingent upon the successful outcome of said action, this defendant does not owe the plaintiff anything by reason thereof."

This paragraph clearly admits the employment by the appellant, Clarke and Yoder, of the appellee and W. F. Hall to defend for each and all of them the action brought against them by Sudduth, nor is there anywhere in the answer any denial of his employment being effected through Yoder, or contrariety of evidence as to the fact that appellee skillfully and efficiently performed the services required under his employment. The second paragraph also admits that the appellee and Hall were together to receive a fee of $1,200.00 for their services, but alleges that the fee was contingent upon their winning the case; and also that each of the three defendants in the Sudduth case named were to be responsible

for one-third of the fee and no more; and further that the final loss of that case by the attorneys absolved the defendants from the payment of any part of the fee of either lawyer.

The third paragraph, while still admitting the appellee's employment, substantially alleges that if the court should hold the appellee entitled to recover any part of the fee sued for, the appellant in that event should be held liable for only a third of such reasonable fee as he may be found entitled to recover. It will thus be seen that no issue was made as to the employment of the appellee by appellant and his codefendants, so whether the employment was effected through Yoder or otherwise was immaterial and irrelevant, and all evidence on that subject introduced by either party should have been excluded by the court; however, in view of the verdict returned, its admission was not prejudicial to either party. The only issues were as to whether or not the fee of the appellee was contingent upon his winning the case in which he was employed, and if not the reasonable value of the services he rendered; and further whether by the terms of his employment the liability of the appellant for his fee was limited to the payment of a third thereof. As to the question whether the fee was a contingent one there was some conflict in the evidence, but as it cannot be said that the jury's finding that it was not of that character was contrary to the weight of the evidence, the verdict should not be disturbed on that ground.

The issues as to the reasonableness of the fee claimed by the appellee was sustained by the great weight of the evidence and was therefore properly determined by the jury. The issue as to the extent of appellant's liability for appellee's fee was also properly determined by the jury, as under the evidence he was liable for the whole of it. It follows from the conclusions above expressed that no error was committed by the trial court in refusing to direct a verdict for the appellant, hence that ground for reversal urged by him is not sustained. His complaint of the instructions cannot prevail. The instructions refused would have submitted false issues of fact to the jury, and those given were more favorable to the appellant than the law authorized.

Judgment affirmed.