## Wilson v. Blanton et al.

(Decided November 27, 1928.)

### Appeal from Harlan Circuit Court.

1. Municipal Corporations.—No survey of adjoining property frontage by civil engineer or any one else to establish grades or determine any other matter is required before passage of ordinance for construction of sidewalks, under Ky. Stats., sec. 3706.

2. Municipal Corporations.—Advertisement for bids for construction of town sidewalks in newspaper published at county seat held

sufficient compliance with Ky. Stats., sec. 3706, which does not prescribe any particular form of advertising.

3. Municipal Corporations.—Reception, opening, and consideraton of bids for construction of sidewalks at regular meeting of town board of trustees, and acceptance thereof at meeting held pursuant to adjournment of regular meeting, held sufficient compliance with Ky. Stats., sec. 3706.

4. Municipal Corporations.—Under Ky. Stats., sec. 3706, it is not necessary to make specifications part of advertisement for bids for construction of town sidewalks, if made available to those desiring to submit bids, as by spreading them at large on trustee's minute books when adopted by ordinance.

5 Municipal Corporations.—Owner of property, against which contractor seeks to enforce lien of assessment for construction of sidewalk, under Ky. Stats., sec. 3706, cannot complain of amendment of specifications, so as to require additional work of contractor, after submission of bid; contractor alone being in position to complain.

6. Municipal Corporations.—Ky. Stats., sec. 3706, does not require town board of trustees to extend to property owners the privilege of constructing their own sidewalks before passage of ordinance for construction thereof.

7. Municipal Corporations.—Property owners, given opportunity for hearing, at which many appeared and protested, before town board of trustees accepted sidewalks, constructed by contractor without objection, under Ky. Stats., sec. 3706, cannot afterward complain that work was not done in accordance with contract, in absence of showing that trustees acted without authority, corruptly, or beyond their jurisdiction; such acceptance being conclusive and remedy available to town by action on contractor's bond.

8. Municipal Corporations.—That sidewalk, built to adjoin asphalt paved portion of street, left space of foot or more between it and adjoining lot and cut off few inches of street, held not available defenses in contractor's action to enforce lien for assessment on such lot, under Ky. Stats., sec. 3706.

9. Municipal Corporations.—Ordinance naming owners of lots adjoining sidewalks along certain street and making apportionment and assessment against their property held sufficient to show that sidewalks constructed in front of their property were accepted, under Ky. Stats., sec. 3706, in absence of other evidence that their lots do not front on such street.

10. Municipal Corporations.—Evidence held insufficient to justify chancellor's finding that chairman of town board of trustees awarding contract for construction of sidewalks, under Ky. Stats., sec. 3706, was financially interested therein as contractor's partner, so

as to relieve property owners from liability for assessment under section 3695.

W. A. BROCK and F. M. JONES for appellant.

LEE & SNYDER for appellees.

Opinion of the Court by Judge Logan—Reversing.

The appellees are citizens and residents of the town of Wallins, in Harlan county, which is a city of the sixth class. Each owned property in that town which was subject to regulations and ordinances of the town relating to the improvement of streets, alleys, and sidewalks. An ordinance was passed on the 5th day of June, 1925, providing for the construction of sidewalks in front of the property on certain streets in the town, which included the property of appellees. Bids were advertised for and submitted, and on the 15th day of July, 1925, one of the bids was accepted, and contract entered into for the construction of sidewalks. The contract was awarded to the appellant, H. B. Wilson. A bond for the faithful performance of his duties was executed by appellant, and he constructed the sidewalks, and after their completion they were accepted by the board of trustees of the town, and the cost was apportioned among the property owners. The appellees refused to pay the assessment against their property, whereupon appellant instituted suit against them to enforce his lien against the property.

The appellees made defense. First traversing the allegations of the petition, and then, in separate paragraphs, pleading additional defenses as follows: (1) That the town was without power to pass an ordinance providing for the construction of sidewalks without first having a competent civil engineer to survey the frontage of the property along which the sidewalks were to be constructed, and to establish the grade of the proposed sidewalks, (2) That there was no advertisement for bids. (3) That no bids were received at any regular meeting. (4) That Jim W. Howard, the chairman of the board of trustees, was a partner of H. B. Wilson to whom the contract was awarded, and was therefore interested in the construction of the sidewalks. (5) That the specifications for the construction of the sidewalks were not adopted by the board of trustees in time to be known by bidders when the bids were submitted. (6) That the bid was not accepted at any regular meeting of the board of

trustees. (7) That the board of trustees did not adopt an ordinance extending the privilege to property owners to construct their own sidewalks in front of their own property. (8) That the work done by the contractor was inferior, and not in accordance with the specifications. (9) That the sidewalks as constructed did not unite, or join the adjacent lots, but left a space between the lots and the sidewalks, which space was in the street. (10) That the board of trustees did not legally accept the sidewalks as constructed in accordance with the contract, because Jim W. Howard was the chairman of the board and therefore disqualified from voting on the question of accepting the sidewalks, and, as his vote was necessary to make a majority in favor of acceptance, the act of the board was void. (11) That the order of the board of trustees accepting the sidewalks shows that only those along Cumberland street were accepted, and the record did not show that the property of appellees, or any of them, fronted on Cumberland street.

This work was done under the provisions of section 3706, Ky. Stats., prior to the amendment of that section by the act of March 25, 1926. The section vests the board of trustees with the power to order any work the board may deem necessary to be done on sidewalks, and the expenses incurred in making and repairing sidewalks must be paid by the owner of the land fronting and abutting thereon if the board of trustees so direct; each lot or portion of lot being assessed for the full value thereof in proportion to the frontage to the entire length of the whole improvement, not to exceed a square sufficient to cover the total expense of the work. There seems to be no provision in this section, which is the whole law covering the matter, requiring a survey by a civil engineer, or any one else, to establish grades, or determine any other matter. The first defense interposed cannot be allowed.

Advertisement for bids is necessary under the provisions of the aforesaid section. The testimony shows that bids were advertised for in a newspaper published in the county seat. The law does not prescribe any particular form of advertising for bids, and, if the board of trustees deemed an advertisement in a newspaper at the county seat sufficient, we are of the opinion that it was a compliance with the law.

The minutes of the board of trustees show that bids were received at a regular meeting of the board on the 6th day of July. There is no basis, therefore, for this ground of defense. It is true the bids were neither accepted nor rejected at that meeting, but the records show that they were received, opened, and considered.

The minutes of the board of trustees show that specifications were adopted on June 18, 1925, and that, at the regular meeting on July 6, 1925, the specifications were amended in at least one particular. It was not necessary to make the specifications a part of the advertisement if they were available to those who desired to submit bids. They appear to have been spread at large on the minute books of the board of trustees when they were adopted by ordinance. This was sufficient. It is true they were amended after the bids were submitted but before any bid was accepted. The contractor is not complaining, and he alone is in position to make complaint if additional work was required by the specifications after he submitted his bid, and that was the case here. The fifth ground of defense is therefore without merit.

It is true that the bid was not accepted on the day when the regular meeting of the board of trustees was held. On that day the bids were opened, considered, and by motion it was ordered that the meeting be adjourned until a later date. The record does not appear to disclose that the meeting was held on the day to which the adjournment was had, but there was a meeting on July 15, and the minutes of that meeting show that it was held pursuant to an adjournment from the regular meeting. This was, sufficient, and that ground of defense is also without merit.

There is nothing in the section of the Ky. Stats., aforesaid, which requires the board of trustees to extend to property owners the privilege of constructing their own sidewalks before the board is authorized to proceed as it did in this case. That defense is not available.

It has been held by this court in a number of cases that a citizen cannot remain quiet while a contractor is making a public improvement in front of his property, and, after the work has been accepted by the governing authorities of the municipality, make complaint that the work was not done in accordance with the contract. Before the work was accepted in this case, the board of

trustees had an open hearing, and the citizens, including the appellees, were given an opportunity to be heard. Many citizens did appear and protest, but, after a consideration of the whole matter, the board of trustees accepted the work. There is nothing in the record that would show that the board of trustees acted without authority, corruptly, or beyond its jurisdiction. It exercised its judgment in the acceptance of the work done by the contractor, and there is no complaint that in so accepting the work it acted without authority, or in violation of any provision of the law. We will not burden the record by citing authorities showing that such acceptance is conclusive so far as complaining property owners are concerned. The contractor executed a bond as is required by the statute which was a guaranty of the faithful performance of his contract, and, if his work is not in accordance with the terms of his contract, the town is not without remedy.

The evidence seems to disclose that at places along the sidewalk it did not touch the lot, but left a space of a foot or more between the sidewalk and the lot. The sidewalk was built to adjoin the asphalt paved portion of the street. There is nothing in the record itself to show that the sidewalk was not as serviceable to the property owners where it is located as it would have been if it had joined the lot. We fail to see any just grounds for complaint on the part of the property owner because a few inches of the street was cut off by the sidewalk to his property. That cannot be made available as a defense in this action.

The ordinance accepting the sidewalks confines the acceptance to those along Cumberland street, but it mentions the property owners whose lots adjoin on Cumberland street, and the appellees are named, and the apportionment and assessment made against their property. In the absence of other evidence showing that their lots do not front on Cumberland street this is sufficient to show that the sidewalks constructed in front of their property were accepted.

This leaves only the fourth and the tenth grounds of defense undisposed of. These grounds relate to the interest of Jim W. Howard in the contract. He did not testify, and it is suggested in the brief for appellant that he was absent and for that reason his deposition was not obtained. The record would be much more satisfactory

if his testimony had explained some of the circumstances tending to show that he may have been interested in the contract. Section 3695, Ky. Stats., is as follows:

"No officer of such town shall be interested, directly or indirectly, in any contract with such town, or in doing any work or furnishing any supplies for the use of such town or its officers in their official capacity; and any claim for compensation for work done, or supplies or material furnished, in which any such officer is interested, shall be void, and, if audited and allowed, shall not be paid by the treasurer. Any wilful violation of the provisions of this section shall be ground for a removal from office, and shall be deemed a misdemeanor, and punished as such."

The foregoing section is so clear and explicit that it needs no elucidation. Similar sections have been upheld by this court. City of Bardstown v. Nelson County, 121 Ky. 737, 90 S. W. 246, 28 Ky. Law Rep. 710; Arms & Short v. Denton, 212 Ky. 43, 278 S. W. 158.

The only question for us to determine is whether the evidence in this case is sufficient to show that Jim W. Howard was interested financially in this contract. If he was so interested, the appellees are right in their contention that they should not be required to satisfy the assessment against them. It is shown that Mr. Howard spent much time about the work while it was being performed, and that he gave orders occasionally to some of those who were engaged in the work. We do not find in this evidence anything that would indicate that he was interested in the contract. He was the chairman of the board of trustees of the town, and as such he naturally was interested in seeing that the sidewalks were constructed in accordance with the contract. It is also shown that he made statements to different persons indicating that he was interested in the work as a partner, but a careful consideration of these statements does not leave that construction as the only reasonable construction to be placed upon what he said. There was some evidence that he had given orders to some of the laborers on the work to merchants in the town to be paid out of their wages. These orders do not appear in the record, although one of the merchants stated that he located some of the orders and turned them over to the attorneys for appellees. Some doubt is felt as to whether the orders

were given on this particular contract. Howard and the appellant had been partners in other work, and probably had built some sidewalks privately contracted for. The evidence is not certain that these orders were not given when work was going on in the construction of other sidewalks. It is also shown that the contractor purchased cement and other supplies from Howard to be used in connection with this work. The evidence is not altogether clear on this point. The appellant testified that Howard was not interested in the contract, and, as against that positive evidence, there are only surmises, suspicions, and some circumstances which may amount to proof. We do not find that the evidence in this case tending to show that Howard was interested in this contract is as strong as the evidence in the case of Beshear v. City of Dawson Springs, 214 Ky. 102, 282 S. W. 764. tending to show that one of the city officials in that case was interested in public work which was done for the city of Dawson Springs. This court, in that case, found that the evidence was not sufficient to establish that the city official was interested in the contract. It is true that the chancellor in that case reached the same conclusion, while in the case before us the chancellor probably reached a different conclusion, as he rendered a judgment dismissing appellant's petition. There is nothing in the judgment to indicate on which of the numerous grounds relied on by appellees it was based, but, as all the other grounds are more or less trivial, we will assume that he reached his conclusion because of the evidence tending to show that Howard was interested in the contract. The chancellor first entered a judgment upholding the assessments and enforcing the liens, but he later set it aside and allowed additional proof. The evidence tending to show that Howard was interested in the contract came, in a large measure, from those who were interested in having it so adjudged. The judgment of the chancellor is persuasive and also has weight with this court, but we are of the opinion that there was not enough in this record to justify his finding that Howard was a partner of the appellant in this contract.

Judgment is reversed, and cause remanded for proceedings consistent with this opinion.